UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ANN-MARIE N. H.,

                              Plaintiff,

v.                                                                5:18-CV-665(TWD)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

APPEARANCES:                                        OF COUNSEL:

OLINSKY LAW OFFICE                         EDWARD WICKLAND, ESQ.
For Plaintiff                                             DAVID HUTTER, ESQ.
250 S. Clinton Street
Syracuse, NY 13202

HON. GRANT JAQUITH                         PADMA GHATAGE, ESQ.
United States Attorney                            Special Assistant
For Defendant
100 S. Clinton St.
PO Box 7198
Syracuse, NY 13261-7198

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

# **ORDER**

      Presently before the Court in this action, in which Plaintiff seeks judicial review of an adverse administrative determination by the Commissioner, pursuant to 42 U.S.C. §405(g), are cross-motions for judgment on the pleadings.[1] Oral argument was conducted in connection with those motions on September 3, 2019, during a telephone conference at which a court reporter was

---

[1] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order, once issue has been joined, an action such as this is considered procedurally as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

present. At the close of argument I issued a bench decision in which, after applying the requisite deferential review standard, I found the Commissioner's determination resulted from the application of proper legal principles and was supported by substantial evidence, and I provided further detail regarding my reasoning and addressing the specific issues raised by the Plaintiff in her appeal.

After due deliberation, and based upon the Court's oral bench decision, which has been transcribed, is attached to this Order and is incorporated in its entirety by reference herein, it is hereby,

**ORDERED**, as follows:

(1) Defendant's motion for judgment on the pleadings is **GRANTED**;

(2) The Commissioner's determination that Plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is **AFFIRMED**; and

(3) The Clerk is directed to enter judgment, based upon this determination, dismissing Plaintiff's complaint in its entirety.

SO ORDERED.

Dated: September 6, 2019
Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
ANNE-MARIE N. H.,

                        Plaintiff,

vs.                                      5:18-CV-665

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
------------------------------------------------------x
```

*DECISION* - September 3, 2019

James Hanley Federal Building, Syracuse, New York

HONORABLE THÉRÈSE WILEY DANCKS

United States Magistrate-Judge, Presiding

APPEARANCES (by telephone)

```
For Plaintiff:     OLINSKY LAW GROUP
                   Attorneys at Law
                   300 South State Street
                   Syracuse, New York 13202
                     BY:  EDWARD A. WICKLUND, ESQ.

For Defendant:     SOCIAL SECURITY ADMINISTRATION
                   Office of Regional General Counsel
                   26 Federal Plaza
                   New York, New York 10278
                     BY:  PADMA GHATAGE, ESQ.
```

*Eileen McDonough, RPR, CRR*
*Official United States Court Reporter*
*P.O. Box 7367*
*Syracuse, New York 13261*
*(315)234-8546*

1     THE COURT: I have before me a request for judicial
2 review of an adverse determination by the Commissioner under
3 42, U.S. Code, Section 405(g). The background is as follows.
4     Plaintiff was born in November of 1970 and is
5 currently 48 years old. She was 42 years old at the onset of
6 her alleged disability in August of 2013, which she later
7 amended to an onset date of April 16, 2011. She is a high
8 school graduate.
9     She last regularly worked in April of 2011 at a
10 level of substantial gainful activity, although she had other
11 work after that date which was below the level of substantial
12 gainful activity. Her past jobs have included bookkeeper,
13 staff accountant, and front desk clerk.
14     In her application for benefits she indicated she
15 suffers from chronic migraines, chronic headaches, ocular
16 migraines, coital cephalalgia, depression, and anxiety. At
17 the initial hearing in 2015, she testified that her headaches
18 are what keep her from being able to work.
19     She has mainly treated with Dr. Joseph at Upstate
20 Neurology and various providers at Family Medicine
21 Associates, with the more recent treatment being from
22 Dr. Commisso there. Other records in the Administrative
23 Transcript include notes of office visits with Family Nurse
24 Practitioner Vitkus of Family Care Medical Group, two visits
25 with Dr. Buniak of Gastroenterology & Hepatology, and one

1  encounter in 2010 before the date of disability with
2  Dr. Shukri of CNY Neurological Consulting.
3  　　　　　There is also a note for treatment of a rash on
4  August 4, 2014 by Physician Assistant Kinsley, which is
5  listed in the transcript index as Exhibit 8F from
6  St. Joseph's Hospital, but the note appears to identify the
7  medical organization as SJP Urgent Care.  There are source
8  statements in the record from treating physicians Dr. Joseph
9  and Dr. Commisso, and examining consultants Dr. Lorensen and
10 Dr. Noia, and non-examining consultant Dr. Willer, who also
11 testified at the second hearing in March of 2018.
12 　　　　　The plaintiff reports that she's able to do self
13 care and grooming, including showering and dressing herself,
14 although sometimes it takes her longer depending on her pain
15 level.  She can also do some housework, including cleaning
16 and laundry.  She can prepare simple meals daily if her
17 family does not cook for her.  She has a driver's license and
18 can drive a car and go out alone for short distances.  She
19 shops for groceries and clothing with family sometimes
20 helping.  She spends her time reading and baking once a week
21 and watching movies.  She socializes with friends and helps
22 her daughter's Girl Scout troop twice a month.  She has no
23 trouble lifting and can stand and walk, although sometimes
24 she feels unbalanced and dizzy.  She can sit but she has
25 light and sound sensitivity when her headache pain is bad.

1    This case has a long procedural history.  Plaintiff
2 filed for Title II benefits on September 3, 2013, originally
3 alleging an onset date of disability beginning August 3,
4 2013, which, as noted, was amended to April 16, 2011.  A
5 hearing was conducted by Administrative Law Judge Jennifer
6 Gale Smith on January 15, 2015, who issued an unfavorable
7 decision shortly thereafter.  Review was denied by the
8 Appeals Council and a District Court action was then
9 commenced.  Thereafter, a consent order reversed the final
10 decision of the Commissioner and the Appeals Council vacated
11 ALJ Smith's decision and remanded the case for further
12 proceedings.
13    A second hearing was held on March 20, 2018 before
14 ALJ Smith, who then issued an unfavorable decision on
15 April 24, 2018, which ultimately became the final decision of
16 the Commissioner and this pending action was then commenced
17 in a timely fashion.
18    In her April 24, 2018 decision, ALJ Smith applied
19 the required five-step sequential test for determining
20 disability.
21    At step one she found plaintiff had not engaged in
22 substantial gainful activity since April 16, 2011 through her
23 last date insured of March 31, 2018, although noting there
24 was some work during the relevant time period which did not
25 rise to the level of substantial gainful activity.

1    At step two she concluded plaintiff suffers from
2 severe conditions of headaches by history, back pain by
3 history, asthma and obesity, rejecting other conditions as
4 not sufficiently limiting to qualify under step two.
5    At step three the ALJ concluded that plaintiff's
6 conditions do not meet or medically equal any of the listed
7 presumptively disabling conditions.  Then after a review of
8 the record evidence, the ALJ determined plaintiff is capable
9 of performing light work with some restrictions, including
10 various postural and environmental limitations.
11    At step four the ALJ concluded with the help of a
12 vocational expert's testimony that plaintiff is capable of
13 performing her past relevant work as a bookkeeper.
14 Alternatively, in considering plaintiff's age, education,
15 work experience, and residual functional capacity, or RFC,
16 the ALJ relied on the testimony of the vocational expert to
17 conclude there were also other jobs in significant numbers in
18 the national economy plaintiff could perform.  Therefore, the
19 ALJ found plaintiff was not disabled at the relevant times.
20    I've reviewed the record carefully, and in light of
21 the arguments of counsel and what counsel had presented in
22 their briefs, I've applied the requisite deferential standard
23 which requires me to determine whether proper legal
24 principles were applied and whether the result is supported
25 by substantial evidence.

1         Regarding the ALJ's determination of the
2 plaintiff's RFC, the plaintiff argues that the ALJ erred in
3 formulating the RFC because she failed to follow the Treating
4 Physician Rule and accorded substantial weight to the opinion
5 of non-examining and testifying medical expert Dr. Willer.
6 The ALJ also accorded examining consultant Dr. Lorensen's
7 opinion significant weight, while giving little weight to
8 treating physician Dr. Joseph, and minimal weight to treating
9 physician Dr. Commisso, all of which the plaintiff argues was
10 in error.
11         As we all know, the determination of a claimant's
12 disability is a legal determination reserved to the
13 Commissioner. I've done a complete review of the record and
14 find that the ALJ properly assessed all of the opinion
15 evidence and gave good reasons for giving reduced weight to
16 the opinions of Dr. Joseph and Dr. Commisso and more weight
17 to the opinions of Dr. Willer and Dr. Lorensen.
18         I will start with Dr. Joseph's source statement
19 dated December 14, 2014 and as reconfirmed and updated on
20 August 24, 2017. To be sure, a treating source's opinion is
21 entitled to controlling weight if the opinion is well
22 supported by medically acceptable clinical and laboratory
23 diagnostic techniques and is not inconsistent with other
24 substantial evidence. When a treating source's opinion is
25 not given controlling weight, the ALJ is to consider factors

1 such as the length and nature of the treatment relationship,
2 the medical evidence in support of the opinion, the
3 consistency of the opinion with the record as a whole,
4 whether the opinion is from a specialist, and any other
5 factors that tend to support or contradict the opinion.
6 Each and every factor, however, need not be
7 recited. The treating physician's opinion need not be
8 afforded controlling weight when the opinion is not
9 consistent with the opinions of other medical experts and is
10 contradicted by other substantial evidence in the record.
11 Initially, I note that it's clear from the ALJ's
12 decision that she thoroughly reviewed and correctly
13 summarized all of the treatment records, including
14 Dr. Joseph's care. As I've noted, the ALJ gave Dr. Joseph's
15 opinion little weight. The opinion included that plaintiff
16 would need five to six unscheduled breaks a month lasting
17 five to six hours to lie down or sit quietly and that she
18 would miss more than four days of work per month.
19 In her reasons for giving little weight to
20 Dr. Joseph's opinion, the ALJ noted that the opinion was
21 based upon plaintiff's subjective reports rather than any
22 objective findings by Dr. Joseph. The ALJ also noted that
23 Dr. Joseph's treatment notes were not consistent with her
24 opinion, as well as with plaintiff's own reports of
25 activities of daily living and other evidence of record.

           For example, Dr. Joseph's treatment notes show
plaintiff was not compliant with the medication regime
prescribed.  Failure to follow recommended treatment is a
valid factor in evaluating plaintiff's symptoms and
disability.  Additionally, physical exams by Dr. Joseph
showed plaintiff to be alert and attentive, her memory was
intact, and she had normal attention span and concentration;
her cognitive functions were normal; cerebellar motor and
sensory exams were normal; her gait, coordination and
reflexes were normal; MRIs of her brain were normal.

           The ALJ also noted plaintiff's reported activities
did not support the opinion of Dr. Joseph but do support the
RFC.  In this regard the record shows the plaintiff could do
self care, and she did light cleaning, prepared simple meals,
baked, and did laundry, and child care, including helping
with her daughter's Girl Scout troop twice a month.  She
read, watched TV and visited friends, including traveling to
Florida for two weeks to help a sick friend.  She could do
some shopping, drive, and go out alone.  She had no trouble
lifting and could stand and walk, although she reported she
sometimes felt unbalanced and dizzy.

           The ALJ noted other medical evidence of record also
did not support Dr. Joseph's limitations.  For example,
Dr. Willer, a neurologist, opined plaintiff's symptoms did
not support a diagnosis of migraines due to the nature of the

headaches as reported by plaintiff to her providers. Additionally, the record shows that while plaintiff complained of frequent headaches to Dr. Buniak in June of 2014, he denied dizziness, weakness, anxiety, depression and difficulty sleeping on that date. However, in September of 2014 when plaintiff again denied dizziness, she also denied frequent headaches, migraines or weakness.

Nurse Practitioner Vitkus noticed plaintiff's complaints of migraines throughout the primary care office visits between September of 2015 and August of 2017, and noted that plaintiff was getting treatment with Dr. Joseph for them. Notably, with Nurse Practitioner Vitkus plaintiff denied visual disturbances, memory lapses, dizziness and weakness, and her physical exams were entirely within normal limits, including findings of no visual disturbances, memory lapses, or any musculoskeletal symptoms.

In August of 2014 plaintiff treated with PA Kinsley at Urgent Care. He noted she was negative for dizziness, numbness and headaches, and the exam was otherwise completely normal except for a skin rash on her hands.

In discounting the opinion of Dr. Joseph, the ALJ also noted plaintiff's treatment was infrequent with Dr. Joseph since the record shows plaintiff saw Dr. Joseph for a total of eight encounters in four years, and there was an entire year during that period that plaintiff had no

treatment with Dr. Joseph. The frequency of treatment is certainly one factor in evaluating a treating source's opinion, including opinions of a plaintiff's likely work absences.

The ALJ's RFC determined that plaintiff could do light work with environmental and manipulative restrictions. I find that she properly gave good reasons for giving little weight to the more restrictive limitations listed in Dr. Joseph's opinion, and the ALJ's determination in this regard is supported by substantial evidence and remand is not required on this ground.

The plaintiff also argues that the ALJ erred in considering Dr. Commisso's opinion related to the need for an unknown number of unscheduled breaks, being off task, and the number of absences. In giving minimal weight to Dr. Commisso's opinion, the ALJ again noted plaintiff's limited treatment history with that provider and that the restrictions were based upon plaintiff's subjective complaints.

The ALJ also found the opinion, like the opinion of Dr. Joseph, was not supported by treatment notes or other evidence of record. For example, in August of 2013 and April of 2014 plaintiff denied headaches, imbalance, or weakness, and the physical exams charted by Dr. Commisso on those dates were normal. In September of 2013 plaintiff complained of

1 headache, but she appeared healthy and the exam was normal.
2 In December of 2014 Dr. Commisso noted plaintiff needed
3 disability paperwork filled out and she was there at the
4 office, quote, "looking to be out of work for migraines."
5 Plaintiff complained of dizziness and light and sound
6 sensitivity, but she appeared healthy, alert and oriented,
7 her memory was intact and the exam was normal.
8      Again, I find the ALJ properly gave good reasons
9 for giving little weight to the limitations listed in
10 Dr. Commisso's opinion, and remand is not required on this
11 ground.
12      Plaintiff also argues that the ALJ relied solely on
13 the opinion of non-examiner Dr. Willer.  However, as is clear
14 from his decision, the ALJ gave significant weight to the
15 opinion of Dr. Lorensen, as well as substantial weight to the
16 opinion of Dr. Willer.  Dr. Lorensen found no restrictions in
17 plaintiff's ability to work.  Dr. Lorensen's examination was
18 entirely normal, and although it was from 2013, there is no
19 evidence in the record that plaintiff's condition worsened
20 between the date of Dr. Lorensen's consultation and the date
21 of the ALJ's decision at issue.
22      On the contrary, the record shows plaintiff's
23 subjective complaints of headaches improved when she took her
24 medication as prescribed and started the Botox treatments for
25 the headaches.  Also, the RFC is even more restrictive than

1    the opinion of Dr. Lorensen.  And, therefore, I find no merit
2    in plaintiff's argument that Dr. Lorensen's opinion does not
3    explain the limitations adopted by the ALJ.
4           Plaintiff also takes issue with the ALJ's reliance
5    on Dr. Willer's opinion because he did not examine her.
6    However, the opinion of non-examining medical experts can
7    constitute substantial evidence beyond that of a treating
8    source if the non-examining expert's opinion is supported in
9    the record.  Here Dr. Willer noted and testified that the
10   description of plaintiff's headaches as set forth in her
11   medical records was not consistent with migraines.
12   Dr. Willer noted plaintiff's headaches were not described
13   consistently as throbbing, and there were inconsistencies in
14   the nature, location and duration of the headaches as
15   plaintiff described to her providers.
16          Additionally, as I've highlighted above, treatment
17   records from her various providers show that plaintiff did
18   not complain of headaches at all at many of her medical
19   encounters during the relevant time period.  The ALJ found
20   Dr. Willer's detailed explanation reasonable, and where
21   evidence is susceptible to more than one rational
22   interpretation, the Commissioner's conclusions must be
23   upheld.
24          For these reasons I find the ALJ's RFC is supported
25   by opinions in the record, as well as the treatment notes and

1  the plaintiff's own reports of activities.
2          In light of the foregoing and considering the
3  entire record and the ALJ's determination, I find that the
4  ALJ applied the appropriate standards of review in
5  determining plaintiff's RFC.  The ALJ set forth good reasons
6  for giving reduced weight to the opinions of Drs. Joseph and
7  Commisso, and the RFC is consistent with other opinions and
8  medical evidence in the record.  Therefore, I find the
9  determination of plaintiff's RFC is supported by substantial
10 evidence and the correct legal standards were applied.
11         Lastly, I'll address plaintiff's argument that the
12 ALJ step four determination was flawed because the
13 hypothetical posed to the vocational expert was not based on
14 substantial evidence.  However, the hypothetical was based
15 upon the RFC determination for the relevant time period
16 which, as I've indicated, I find is supported by substantial
17 evidence.  The objective medical findings support the RFC
18 that plaintiff could perform light duty work with some
19 environmental and manipulative restrictions.  The ALJ
20 elicited testimony from the vocational expert to determine
21 that plaintiff could perform her past relevant work as a
22 bookkeeper, and additionally, that she could perform other
23 jobs existing in the national and local economy given her
24 vocational factors and functional limitations.
25         Thus, all in all, I find the determination of the

1  ALJ in the step four analysis is supported by substantial
2  evidence and the correct legal standards were applied.
3        So I grant the defendant's motion for judgment on
4  the pleadings and will enter a judgment dismissing
5  plaintiff's complaint in this action.  A copy of the
6  transcript of my decision will be attached to the order
7  should any appeal be taken from my determination.

                    *           *           *

C E R T I F I C A T I O N

    I, EILEEN MCDONOUGH, RPR, CRR, Federal Official Realtime Court Reporter, in and for the United States District Court for the Northern District of New York, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

_____
EILEEN MCDONOUGH, RPR, CRR
Federal Official Court Reporter